May it please the Court, my name is Natalie Wyatt-Brown, and I represent Rollin and Maureen Morehouse in this Tax Court Appeal. This case is primarily about whether or not the participation in the Conservation Reserve Program and receipt of payments to a non-farmer are considered self-employment income. The main issue is whether or not merely receiving money from the government for enrolling land in the CRP constitutes legally sufficient regular and continuous participation to be a trade or business, and whether the rent payments that Mr. Morehouse received from the CRP are eligible for the rentals from real estate exclusion under the self-employment income. Doesn't he, though, on the application forms represent that he is a farmer, and shouldn't he be held to that? Well, there's two answers to that question, Your Honor. The first answer is that you look at the realities of the situation and not simply the words that are used. And the second answer... So he can just put false statements on the form? Well, it's not a false statement, that's the second part of my answer.  that was previously being farmed to enroll in the CRP, and that that meets the legal definition for participation in the CRP. So he's filling out the pre-printed form that the government gives him. He is complying with the requirements of the CRP. There's no question that he's qualified to participate in the CRP. And so the mere fact that the form says actively engaged in farming, that actually references a piece of the statute that has this exemption in it. So just saying on the form, because it meets a certain legal definition, that he's a farmer doesn't make him a farmer. And that's a similar argument that the CRP itself refers to these payments as rent. But again, you look at the economic realities of the situation, and the IRS is arguing strenuously that just because it's called rent doesn't make it rent. Well, the same applies to the farmer issue as well. Oh, so the trade or business income that's involved here goes mainly to the Social Security Trust Fund, and so if you're so old, you don't have to pay it even if it's outside of this kind of a situation, or is that right? Maybe the taxpayer, your Social Security income, you only have to pay the tax if you're on a portion of your Social Security income, I mean, of your income if you earn enough, isn't that right? So, like it used to be, you didn't have to pay your Social Security tax if you made more than $106,000 or something like that. None of that's discussed here, so I take it this taxpayer is fully liable under those ramifications, is that right? Well, yes, he's not entitled to the exemption from Social Security income, where if you meet a certain amount of income, then after that you no longer pay the Social Security tax on it, because for one thing, Mr. Morehouse is not presently employed in a full-time job, so he has investments, and he was at that time in 2006 and 2007 staying home and taking care of his four young children. You pay your Social Security stipend on investment income, don't you? No, Your Honor, you don't. You don't pay self-employment tax on investment income, only if it has a nexus to a trade or a business, and that's the issue that's in dispute here. This is investment farmland. His father died, left him this land, he bought out his siblings so that there's only one and then he enrolled the land in the CRP after having rented it to another farmer and kept it as an investment, and that's our position, and then he then treated it for tax purposes as rental from real estate. There are actually three parcels that are involved, two of which got enrolled in the CRP back in 1997, and one of which he always cash-rented to a tenant farmer, and there's no question that the cash-rent land was treated correctly as rental income. The only issue here is whether or not the CRP income should be treated in the same manner. I was interested in the administrative and legislative history of this problem and the timing of this case versus the 2008 amendment. Would you clarify for me, if we held that the receipt of CRP payments is not a trade or business unless you're an active farmer, what would be the impact for years governed by the 2008 amendment? It could easily have an impact on those years. The only change in 2000... I thought, yeah, but tell me what it is. I think I know, but I want to make sure I got it right. Yeah, it certainly could apply now, as we've just discussed. How would it apply? Well, it would... If we made that holding, if we held that, then regardless of the 2008 amendment, the non-farmers recipients would not owe the tax. Correct. But because of the 2008 amendments, the active farmers who received CRP would have to pay the tax unless they were social security beneficiaries. Right. Have I got it right? Yes. Yes, that's correct. Because the 2008 amendment only affected the rental income side of your two-pronged attack on the agency. Right. I want to make it very clear that this all is from 2006 and 2007, and so the 2008 amendments obviously do affect people for those tax years going forward, 2008 forward, but not people in 2006 and 2007. But you said something that I'm confused about. Okay. If only if the farmer, the CRP payments were trader business income, if it's rental income, they wouldn't have to pay the tax, correct? Correct. So it's a double-barrel thing that if you follow the contract that they have with the USDA, which says it's a rental proposition, the money they get wouldn't be taxable. It's only this IRS, the commissioner has decided to collect this money and he's saying that if CRP says you can't, you're not a farmer, it isn't trader business income, but it's the trader business of the CRP itself kind of fashioned it out of whole cloth, hasn't it? Well, that's our position. I mean, basically the CRP itself is the whole point of it is to do nothing with your land, and so our view of that is that's the same thing as a light and air easement or a line of sight easement where you're being told we want you to restrict your use of the land and we're going to pay you for that, and that's just like paying rent on an easement. Have you got any authority? It sounds like the commissioner strongly disagrees that your easement example would be rental income under the tax code. Well, the only case on point is actually the Woodcurt decision from the Sixth Circuit, and that one did come out against our position, to be honest, that's what happened, that there is a very strongly worded dissent that we think is correct. If the local power company bought an easement down through the middle of my farm and paid me $10,000 a year for that easement, that would be rental income to me, wouldn't it? Right. And I wouldn't pay social security, I wouldn't pay the tax, right? Right. It would be subject to the rentals from real estate exclusion, yes. So the restrictions that CRP puts on a farmer with the contract they have, which kind of is like, I've taken part of my land out of production because the power company gets to come on and mow the weeds and repair the lines, it's kind of the same, isn't it? Yes, I agree. I completely agree. It's very similar in that there's a restriction on the taxpayer's ability to use the land. He can't grow certain things on it, he can't farm it, he can't build it, he can't decide to put a road in it. He has to get the government's permission really to do anything with the land other than what is in the contract. That's a very significant restriction, and the idea that that's not a rental payment really doesn't make a lot of sense. Well, WIPCR involved farmers, and so the WIPCRs were farmers, but Mr. Morehouse is not a farmer, so there's no nexus to the farming operation. On the active farmer question, it simply followed the agency's soil bank era ruling. Right, and we don't disagree. It was not until the notice, the 2006-108 notice, that A, you lost the second issue, and B, Congress was motivated to step in.  Well, I disagree that the 2006 notice has any impact, because it was never formally adopted by the IRS. It was issued, and then they didn't follow through with it. It's not binding. It's simply an advisory. Well, it had an impact on the tax court. Well, yes, it did, but we... Well, okay, I mean, it's his, and it's, you know, we're still... Right, but we disagree. Pardon? We simply disagree. I know, but it had a tremendous impact, and it was the first time, I mean, the agency did a flip-flop on that issue. Yes, and in fact... Somehow said, well, even though it now likens the CRP to soil bank, it took a completely different view of the trade or business issue. Right, right, and then they never did formally... Claiming that CRP is this environmental wonderland, and soil bank was merely putting land aside so we don't have to pay for the surplus crops that would have been grown. Yeah, in fact, in the tax court, at the tax court level, the IRS argued that Mr. Morehouse was involved in an environmentally friendly farming operation by participating in the CRP. How was the soil bank... You took your land out of production, and the government paid you so much an acre for doing that, and so how much... How was that money taxed, if at all? What was that? It was treated in a very similar manner to the CRP. As a trade or business, or as rental income? No, it was WIPCA, right? If you were an active farmer, your soil bank private payments were subject to self-employment tax. Right, the IRS... If you weren't, I don't know what the answer was. It was rental income then, was it? No, the IRS had previously issued some revenue rulings back in, during the soil bank period, saying that if you're an active farmer, then it's subject to self-employment tax, but that they also specifically held in various points that if you're not an active farmer, it's not subject to self-employment tax, and our position is that the soil bank is really very similar to the CRP, and shouldn't be distinguished from that, and we agree with those earlier rulings from the IRS that those should apply here. We have a non-farmer who is merely participating in the CRP, and that that's an entirely passive participation, and it's not a trade or business, because it's not connected to any farming activity, and I'd like to reserve the rest of my time. Thank you. Thank you. Ms. Erickson? May it please the Court, Marian Erickson for the Commissioner of Internal Revenue. I would just like to respectfully disagree with my opposing counsel that the CRP is being paid to do nothing with your land. In fact, there are some requirements of the CRP, which I'm sure you're familiar with from reading the briefs, that they don't simply let the land lie fallow. They have to follow certain weeding, mowing, pest control. I would guess that the obligations, the enrollee obligations have, like everything else controlled by the government, grown over the years. I'm not familiar with exactly what the soil bank required, Your Honor, but I think it was... If you put it in a soil bank, you either had to do it or hire somebody to do it. Okay. So it was similar. Similar. My understanding is... Spray the weeds and do things like that. So it wasn't an activity-free proposition. Okay. So it was similar to the CRP. They devised some additional things on the CRP that wasn't required, but it's not... Okay. I think it's helpful in looking at this question, which I think is a close question, to remember that self-employment tax is not a punishment. It's a way of funding a public good and a benefit for the individuals who are not paying into the Social Security system, so they'll have some retirement income when the time comes. But the question is, you still have to make the trader business versus investment activity. Right. That's true. Yes. You have to decide that. And I think... Your client has done a flip-flop in 50 years on that issue, and recognizing Chevron and the other less deferential decision, why is this flip-flop okay? Well, I think the... On the trader business issue, because I can't see a lot of difference between the level of activity required by a CRP enrollee and the 20, 30, 40, 50 hours a week an active personal investor has to make to massage and grow his or her portfolio. Right. Well, there's no so-many-hours-per-week requirement for... I mean, the level of activity, sure, it's substantial, and sure, it's doing something other than you would do as a passive landlord. But that's true in all kinds of different activities that are not trader business on the tax floor. Right. I understand that. I understand that, Your Honor. As I say, I agree that it's a close question. I think we need to look at the tax court opinion, which was very thorough, and I think well-reasoned, and take into account the rules of construction that are useful sometimes when you have a close question, that self-employment income should be... I thought it was pretty conclusory on this question. Self-employment income should be... No, we like the 2006-108 notice. Well, that notice is clearly an indication of what the IRS's position is, and it couldn't be any more clear. Yes, now. In fact... Did it acknowledge that it was changing its position? Well, in the notice, I don't think so, but... In any announcement that went with the notice. Was there any explanation as the Supreme Court has suggested can be very significant when an agency changes its position and wants deference? An explanation of why the position was being changed is very significant to judicial review. Do we have that here? I don't know what the explanation is, but interestingly, the first time that the IRS took that position apparently was in the Hasbro case in the tax court, where we actually were on the other side of the issue, and those taxpayers were arguing that it is a trader business because they wanted to deduct their expenses against their income. And we initially had taken the other position that no, it's not a trader business, but then after the Wray decision came out, we conceded that these people who were not farmers, who were participating in the CRP, were in a trader business. And that's just a figment of the Commissioner's imagination. I mean, you ought to be consistent and do the CRP as rental income for both farmers and farm owners, and that would be the fair thing to do. I mean, there's no distinguishable reason why this CRP activities that you hire somebody to do, or maybe do yourself, makes you in a trader business. Well, Your Honor, I think there are two things there. One is that the actions of Mr. Redlin are imputed to Mr. Morehouse as well. So it's not just the paperwork that he's filling out. It's the actual physical labor that's being done by his agent. So that is significantly more active participation. It's continuous and active engagement in the activity. But the other question is about the rental income, is that rent, even though, yes, the term is used in the statute, rent is generally paid for the use or occupancy of the land. And here, the USDA is not using or occupying the land. They have a very limited right to go on the land to make sure that he's complying with the terms of the CRP. But they're not using the land themselves. Basically, they're achieving a public good by allowing the land to not be farmed and not to erode. I mean, there are all kinds of conservation reasons for doing this. Well, let's talk about the farm reason. They're renting the land so it won't be used to grow produce that the government would have to buy as surplus. Well, that's maybe one of the reasons. Yeah, that's one of the big reasons. That was the biggest reason 50 years ago. And I can't believe it isn't still a significant reason. Now they've figured out how to build in incentives so that the environmentally optimal land is what's taken out of production. And all that is good. But whether that's enough to change the nature of the beast under the tax laws, as you say, it's a very close question, I think. I believe if you examine the legislative history of this program, crop insurance became so expensive for the government to subsidize on this marginal land, it was cheaper for the taxpayers to do the CRP thing with the added benefit. And so you've limited the use. You maybe can't physically come on the land, but the government comes on your regulations and saying this you can do and that you can't do. This is a ‑‑ It's not a traditional use or occupancy as envisioned or usually meant by the word rent. Well, it's not a lot different than the power easement either because you can farm under that except if they have to come on with the big trucks to put up lines that go down or something like that where you lose your crop. You're right. It's unique. It's a unique situation. It's not exactly like ‑‑ Or the chemical company that, you know, paid the rent. Right. No, I understand. I think that you have to keep in mind this Court's decision in Bott, which although it wasn't a CRP case, I think does help to look at the situation of someone who was not a farmer who was involved in its corn processing co‑op. And, in fact, their activities were very similar to the activities of Mr. Morehouse in this case. But it was tied to the production of corn. But they didn't actually physically produce any corn. They belonged to this co‑op. I mean, I studied it. And the reasoning was that these value‑added payments were based on the amount of corn you contributed to the co‑op's efforts. Right. But they didn't actually physically do it. They checked a box to let the co‑op do it for them. So, in this case, they were doing actually even less than Mr. Morehouse on his land because they didn't even have land. They were just ‑‑ they were retired farmers. They weren't active farmers. And so they were basically filling out paperwork to participate in this program because it involved some actual corn. It was considered a trader business because of the ‑‑ I mean, again, this Court said this is a unique situation. And they relied on the fact that it was a co‑op. But I think the CRP is an analogous unique situation that is informed by analogous to what situation now? Analogous to the co‑op, the corn co‑op situation in Bott because it's the same type of level of activity that was considered a trader business, even though they were not active farmers. Which, you know, Mr. Morehouse is making a big distinction here, but in the Webker decision, because really the only thing different about that decision is that Mr. Webker was a farmer. In this case, Mr. Morehouse was not a farmer. I'm not sure that that's really all that relevant because the tax court held that the process of participating in the CRP was itself a trader business. So I just want to mention also that I do think it does help to look at the rules of construction that the self‑employment income statute should be broadly construed because it's a public good and that exceptions such as the rentals and real estate exceptions should be narrowly construed. And often when you have a closed question, those things can make a difference. Under the 2008 amendment, both what I'm calling active farmers and farmers in the Morehouse situation will pay the self‑employment tax unless they're social security beneficiaries. Both categories agree. Yes, Your Honor. Our interpretation of the 2008 amendment, it wouldn't change anything for Mr. Webker because unless at some point he begins to receive social security or disability payments. And our position is that the fact that Congress enacted a statute that did make one narrow exception and said this doesn't affect the treatment of anybody else is an indication that they acknowledge. But, of course, the agency could change again on a trader business issue or the courts could rule differently. The 2008 amendment is written only to addressing the rental income. But if the agency's position is sustained and if I could stay with it on trader business, then both groups will pay the tax unless they're social security beneficiaries. In other words, the groups in Webker and the group added by the agency change their position. If I could predict what the IRS was going to do, I would have a lot more money than I do now. Oh, I think they would stick with this given that, I mean, if nothing else, the financial concern about the trust fund leaves the agency with a strong incentive to reach out for additional taxpayers. I just want to mention one other thing. In his reply brief, Mr. Morehouse makes a point that, from his point of view, the CRP payments basically substituted for the rent he otherwise would have received on the land if he had simply rented it to a tenant farmer. And I think that that's a little bit of a red flag. That's really irrelevant is how he looked at the income. That's not the point. The point is whether it meets the definition of rent as use or occupancy of the land. But in the free market, that's pretty close because you wouldn't put it in the marginal land because you could do stover and they could make ethanol out of it and things like that. Right. That's kind of the point. Well, it's not that it's irrelevant to him. I think it's irrelevant to the legal question here. If the court has no further questions, I'll rest. Thank you. Thank you. Ms. Weibrown has time to follow. May it please the Court? Well, first of all, I want to address the IRS's argument about the fact that Mr. Morehouse was engaging in activities with respect to the CRP. And she points to Mr. Redland as being Mr. Morehouse's agent and we have to attribute his physical activities. But as we've pointed out, I mean, that consisted of two incidents of seating, both of which occurred many years earlier, and both of which were required under the CRP. Basically, you have to put on ground cover that's perennial. And then if any of it dies off because of a bad winter or something, you've got to put a little bit more down. And then one instance of weeding. So this is not the kind of continuous and regular activities that's contemplated under the definition of a trade or business. So even when you include Mr. Redland's activities, you still don't get to that level. My impression was that there is some monitoring requirement that he does it for both the Morehouse CRP land and his own land that he's enrolled. Is that wrong? Again, it's sort of, you know, looking at it. I mean, it isn't terribly involved. It isn't as though he's going out and doing testing or, you know, something more involved than that. Suppose if there's a drought or, you know, it can get involved. Sure. I mean, if there were some kind of disaster, then perhaps, you know, he'd pick up the phone and call Mr. Morehouse and say, hey, there's a tornado and now all your land's all messed up and we have to go fix it. And that kind of leads into actually the discussion about the bot case. Because the IRS keeps pointing to bot and saying, well, that's a very similar case, a similar level of activity, because the bots only had to check a box. They didn't physically provide the corn. And that's a lot like Mr. Morehouse. But what that's forgetting is that that was a co-op, and in that unique situation a co-op is treated more like a partnership where all the activities of the entire organization are attributed to each of its members. And so it's an agency relationship. And so the co-op in that case was acquiring, processing, and selling corn. That's a trader business. So that's the distinction, and that's what we don't have in this case. And so, you know, again, the IRS is kind of, you know, recognizing that these things aren't consistent. With respect to the Hasbro case, again, the Hasbroks were asking the IRS to allow them to take a deduction, and they were saying, well, we're not farmers, you know, we're not farmers but it's CRP, it's a trader business, and the IRS was just saying, no way, that's not right. But what ended up happening was there's a lot, if you read the decision, you can see there's a lot of letters and a lot of fighting and arguing. Eventually the IRS said, okay, fine, so you're not, you know, it's a trader business or whatever, we don't care anymore. And then the issue in the case, though, was whether or not the IRS had a justification for its position and whether the Hasbroks could get their fees. And the court ruled, no, the IRS's original position had merit, therefore you don't get your fees. So we feel that actually Hasbrok supports us because it's consistent where the court is saying, hey, you know, that's a reasonable position to take that somebody who isn't a farmer who participates in CRP is not involved in a trader business because there's no nexus between those two things. And then I just want to point out that there is a revenue ruling, 60-170, that we cited in our reply brief in which the IRS itself has said that an easement generates rent. So this position that they're taking now that, well, you know, you can't say that it's really an occupancy is not correct and it's not even consistent with their own rulings. And I see that I'm out of time, so unless you have any more questions. Are you aware of any explanation for the change of position by the agency? No, I'm not aware of anything. They simply just came out with this new decision, you know, reversal of its position and then never formally adopted it. Thank you. Very good. Thank you, counsel. It's an interesting issue. We'll take it under advisement. It's been well-briefed and argued.